## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **ROMEO DONZELL MOSLEY, SR.,** ) | |
| **AIS # 264012** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No.: 22-00505-TFM-N |
| ) | |
| **OFFICER TYRESE LONG,** ) | |
| ) | |
| Defendant. ) | |

### REPORT AND RECOMMENDATION

Plaintiff Romeo Donzell Mosely, Sr., an Alabama prison inmate, who is not represented by an attorney, filed a Complaint under 42 U.S.C. § 1983.[1] (Doc. 13). This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R). (Doc. 11). This matter is before the Court on Defendant's motion for summary judgment.[2] (Doc. 40). For the reasons discussed herein, it is **RECOMMENDED** that this motion be **GRANTED** in favor of Defendant Officer Tyrese Long, and Plaintiff Romeo Donzell Mosley, Sr.'s action be **DISMISSED** in its entirety.

### I.    Background and Factual Allegations.[3]

---

[1]    Plaintiff Mosley initially filed a complaint in the United States District Court for the Northern District of Alabama. (Doc. 1). Thereafter, the action was transferred to this Court and Plaintiff Mosley filed an Amended Complaint against "Officer Young." (Doc. 13). Officer Long was substituted as the defendant on June 5, 2023. (Doc. 23). All references to the Complaint in this report will refer to the operative Amended Complaint, and the allegations contained within the Complaint are understood to be directed at Defendant Officer Long.

[2]    The Court converted the Defendant's Answer, Special Report, and evidentiary material to a motion for summary judgment. (Docs. 33, 34, 35, 41).

[3]    The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." *Priester v. City of Riveria Beach*, 208 F.3d 919, 925 n.3 (11th Cir. 2000).

Plaintiff Romeo Donzell Mosley, Sr. ("Mosley") claims that when he was taken into custody on September 14, 2020, Officer Long applied handcuffs "in such a way to render [Mosley] permanently disfigured and disabled." (Doc. 13; PageID.10). While Mosley characterizes his claim against Officer Long as "police brutality with malice and vicious intent" (*Id.*; PageID.11), the Court construes the claim as one of excessive force arising under 42 U.S.C. § 1983.

Officer Long answered the Complaint, denied the allegations against him, and filed a Special Report in support of his position. (*See* Docs. 33, 34). The Special Report included his personal affidavit (Doc. 34-1), the affidavit of Officer Beckham (Doc. 34-2), medical records from USA Health (Doc. 34-3), records from Mobile County Metro Jail (Doc. 34-4), medical records from DCH Regional Medical Center (Doc. 34-5), medical records from Alabama Department of Corrections (ADOC) (Doc. 34-6), and the body worn camera videos of Officer Long and Officer Beckham (Doc. 35; identified as Exhibit A-1 at Doc. 34-1; PageID.97, and Exhibit B-1 at Doc. 34-2; PageID.116, respectively).

According to Officer Long and supporting materials, in the late evening of September 13, 2020, Officer Long attempted to pull over Mosley after observing him make a right turn out of a parking lot without a turn signal. (Doc. 34; PageID.78-79). Mosley ignored Officer Long's lights and sirens and led Officer Long (and other City of Mobile police officers) on a high-speed chase. The chase ended when Mosley's vehicle spun out and came to a stop in Mississippi. In addition to attempting to elude police officers, Mosley had an outstanding warrant in Baldwin County, Alabama, so he was arrested. Video from the body worn cameras of Officers Long and Beckham confirm the events of September 13-14, 2020, involving Mosley and the incident subject of this action.

The video evidence reflects that Mosley led Officer Long on a car chase that lasted approximately 13 minutes, reached speeds of more than 100 m.p.h., and ended over the state line when Mosley lost control of his vehicle. (*See* Doc. 35, Exhibit A-1). The body worn camera footage ("bodycam") shows Officers Long and Beckham (who responded to the chase and followed behind Officer Long in his own patrol car) exit their patrol cars with guns drawn. As the officers approach Mosley, he is seen lying face down on the ground. Officer Beckham reaches Mosley first and handcuffs Mosley with his arms behind his back. (*See* Doc. 35, Exhibit B-1). Officer Beckham avers that Mosley did not make any comments about the handcuffs or feeling discomfort. (Doc. 34-2; PageID.144). And this is borne out by the bodycam as well. (*See* Doc. 35, Exhibit B-1). Mosley was placed in the back of Officer Long's patrol car. (*See Id.*, Exhibit. A-1). Mosley asked if he could lay down and, at some point thereafter, he laid down in the back of the patrol car. (*Id.*). Officer Long spoke with officers on the scene, waited for a tow truck to arrive, and proceeded to write reports of the incident. (*Id.*). While Officer Long sat in the front of his patrol car completing incident reports, Mosley intermittently asked questions about the citations he was receiving, whether he would be able to see his girlfriend (who was the passenger in the vehicle), and turning on the air-conditioning. (*Id.*). After being handcuffed for approximately 45 minutes, Mosley notifies Officer Long that the handcuffs "locked up" and closed on him when he laid down in the back seat of the patrol vehicle, and Officer Long adjusts Mosley's handcuffs after he voices discomfort. The record evidence further reflects that after Officer Long adjusted Mosley's handcuffs, Mosley did not make any further comments or complaints about the handcuffs (or discomfort to his right hand or fingers) while waiting to be taken to Mobile County Metro Jail ("Metro Jail") or while being transported to Metro Jail on the morning of September 14, 2020.

The record further indicates that Mosley first complained about injury to his hand on October 14, 2020, a month after his arrest, stating he lost feeling in his right pinky finger. (Doc. 34-4; PageID.163).  An x-ray and ultrasound of his hand were ordered and obtained while incarcerated at Metro Jail. (*Id*.; PageID.173; Doc. 34-3; PageID.126). A nerve conduction study was performed on November 16, 2022, and suggested right ulnar neuropathy. (Doc. 34-6; PageID.480).

For the reasons that will be further explained, despite any demonstrated injury, the video evidence supports that no constitutional violation occurred, and Officer Long is entitled to qualified immunity as a matter of law.

## II. Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'") (emphasis omitted).

Defendant, as the party seeking summary judgment, bears "the initial responsibility of informing the district court of the basis for [his] motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Clarke v. Coats Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If Plaintiff, the nonmoving party, fails to make "a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof," Defendant is entitled to summary judgment. *Celotex Corp.*, 477 U.S. at 323. In assessing whether

Plaintiff has met his burden, "the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. . . . Instead, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998-99 (11th Cir. 1992). The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts. A genuine dispute requires more than "some metaphysical doubt as to material facts." *Garczynski*, 573 F.3d at 1165 (citation and internal quotation marks omitted). "A 'mere scintilla' of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment." *Id*. In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). More importantly, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. Discussion and Analysis

Mosley claims that Officer Long is liable for using excessive force against him by applying handcuffs that were too tight when arresting him on September 13, 2023. Officer Long has asserted the defense of qualified immunity as to the claim brought against him. Thus, the Court begins with a discussion as to qualified immunity.

**<u>Qualified Immunity.</u>**

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory

or constitutional rights of which a reasonable person would have known.'" *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). For qualified immunity to apply, Officer Long bears the burden of first showing that "he was acting within his discretionary authority when the alleged wrongful acts occurred." *Richmond v. Badia*, 47 F.4th 1172, 1179 (11th Cir. 2022). The burden then shifts to Mosley to show that Officer Long's conduct violated a clearly established statutory or constitutional right of which a reasonable officer would have known. *See Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1395 (11th Cir. 1994).

"To determine whether an official was engaged in a discretionary function, [courts] consider whether the acts the official undertook are of a type that fell within the employee's job responsibilities." *Crosby v. Monroe Cty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). This is a two-step inquiry, which requires asking whether the government employee was (1) "performing a legitimate job-related function" and (2) "through means that were within his power to utilize." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). In approaching the first step, "the defendant must have been performing a function that, *but for* the alleged constitutional infirmity, would have fallen within his legitimate job description. *Id*. at 1266. Here, Officer Long affirms that he pursued Mosley on September 13, 2020, after observing a traffic violation. Clearly, the "general nature" of conducting traffic stops is within an officer's discretionary authority. *Id.; see also, Duncan v. Bibb Cnty. Sheriff's Dep't*, 471 F. Supp. 3d 1243, 1263 (N.D. Ala. 2020) ("In general, an officer conducting a traffic stop is a discretionary act for the purposes of qualified immunity."). This is so even if the act was ultimately "committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Harland*, 370 F.3d at 1266. Next, it must be

6

determined whether Officer Long was "executing that job-related function – that is, pursuing his job-related goals – in an authorized manner." *Id*. Noting that a defendant is not empowered to violate constitutional rights as a part of his official duties, the Eleventh Circuit has maintained that the examination of the second prong is "on a general level." *Id*. at 1267. That is, putting aside the constitutional claim asserted, would the defendant's action "undoubtedly be considered part of [his] duties and legitimate exercises of [his] authority." *Id*. Stated another way, the fact that a defendant may have performed a job-related function in an unconstitutional manner does not change that he was fulling a legitimate job-related function. *Id*.

Here, conducting traffic stops and effecting arrests are within an officer's "arsenal" of powers. *Id*. Furthermore, there is no dispute that Officer Long had probable cause to arrest Mosley. Thus, the burden shifts to Mosley to show that Officer Long is not entitled to qualified immunity on the claims asserted against him.

**<u>Section 1983 Fourth Amendment Claim.</u>**

Because the handcuffing described by Mosley was used in effectuating an arrest, his claim falls under the protections of the Fourth Amendment.

The Fourth Amendment protects people against "unreasonable searches and seizures." U.S. Const. amend. IV; *see also Mapp v. Ohio*, 367 U.S. 643, 655 (1961) (Fourth Amendment protections are enforceable against state actors through the Due Process Clause of the Fourteenth Amendment.). "A seizure occurs when, 'in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *U.S. v. Puglisi*, 723 F.2d 779, 783 (11th Cir. 1984) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). And "all claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed

under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Thus, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Id.* at 397. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. at 396 (citing *Terry v. Ohio,* 392 U.S. 1, 20–22 (1968)). This reasonableness standard embodies "allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397. Notably, courts "'recognize[] that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'" *Baxter v. Roberts*, 54 F.4th 1241, 1269 (11th Cir. 2022) (quoting *Graham*, 490 U.S. at 396).

The test for determining whether force used during an arrest is excessive was laid out by the Supreme Court in *Graham* and "requires careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* These factors are analyzed "from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts, and balance[s] the risk of bodily harm to the suspect against the gravity of the threat the officer sought to eliminate." *McCullough v. Antolini*, 559 F.3d 1201, 1206 (11th Cir. 2009). Courts look to the "totality of circumstances" to determine whether the manner of arrest was reasonable. *See Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985). Accordingly, the Court turns to the facts of this action to assess the constitutionality of Officer Long's conduct.

At this summary judgment stage, as previously discussed, the facts are to be viewed and all reasonable inferences are to be drawn in favor of the party opposing summary judgment; here, that is Mosley. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, Officer Long has produced video evidence which clearly captured the events in question. Because there are no allegations or indications that this video evidence was altered nor that it does not depict the incident accurately, the Court will rely on the video evidence and adopt that version of facts for purposes of ruling on this motion. *Id*. at 379-80. The Court does however, for purposes of this motion, take as true Mosley's allegation that he suffered nerve damage to his hand following his arrest on September 14, 2020.[4] Even with this consideration, Officer Long's conduct and actions in arresting Mosley can only be viewed as reasonable. *See Huebner v. Bradshaw*, 935 F.3d 1183, 1191 (11th Cir. 2019) ("And when looking specifically at an excessive-force claim, we look to 'whether an officer's conduct in making an arrest is objectively reasonable or if it is an over-reactive, disproportionate action for the situation.'") (quoting *Stephens v. DeGiovanni*, 852 F.3d 1298, 1317 (11th Cir. 2017).

There is no dispute, and the record evidence clearly shows that Mosley fled the attempted traffic stop of Officer Long. For over 13 minutes he refused to stop his vehicle and led officers on a highspeed chase. While failing to use a turn signal is a minor traffic violation and cannot be viewed as a serious crime, attempting to elude police by fleeing can be. Furthermore, Mosley reached speeds of over 100 mph during the chase, which obviously put the safety of Mosley, his passenger, the officers, and innocent drivers at risk. Here, the *Graham* factors weigh in favor of

---

[4]     Notably, Mosley did not claim to have a problem with his finger due to the arrest until October 14, 2020 - a month after his arrest. (Doc. 34-5; PageID.163). There are also indications in the record that Mosley's injury may be related to a previous, ongoing rotator cuff problem, and may have an aspect of malingering or exaggeration to it. (*See* Doc. 34-6; PageID.407-08, 473, 480).

Officer Long and reflect that Officer Long could reasonably have used force to arrest Mosley under these circumstances. However, it is undisputed by the record evidence that at the time Mosley was physically apprehended and placed in handcuffs by Officer Beckham (not Officer Long), he was not resisting. And no force was used on Mosley. The bodycam clearly shows Mosley was lying face down on the ground when the officers approached him; Officer Beckham placed handcuffs on Mosley, with his hands cuffed behind his back; Mosley made no comment related to the cuffing or any discomfort at the time he was handcuffed or placed into Officer Long's patrol car. Accordingly, there is nothing to suggest that the handcuffs were placed on Mosley too tightly or with any force, much less excessive force to run afoul of the constitution.

Approximately 45 minutes pass before Mosley makes a single complaint about his handcuffs, though he speaks to Officer Long multiple times during this period. When Mosley does complain, he explains that the handcuffs tightened up on him when he laid down in the back of the patrol car – not that they were originally placed on him too tightly. In other words, any damage done by the handcuffs was unintentional, accidental, without malice, and not the fault of Officer Long or any other officer. Indeed, the video evidence shows Mosley telling Officer Long that he is "stuck"; "can't move my arm"; "hurt'n," and Officer Long turns from the driver's seat to face Mosely, shines a flash light towards Mosley to check on him, and tells him to "hold on", "you gonna have to wait man." (Doc. 35; Exhibit A at 1:01:14-1:01:44). Mosley then asks about seeing his girlfriend and complains about being hot in the vehicle before again telling Officer Long that the handcuffs "locked up" on him when he laid down in the back of the patrol car. (*Id*. at 1:03:34-45). Officer Long explains he will fix it and immediately exits his patrol car and gets assistance from his supervisory to help him fix Mosley's handcuffs. (*Id*. at 1:03:46-1:06:30). While Officer Long reapplied the handcuffs and confirmed they were on correctly and not too

tight, Mosley reiterated that when he laid down, the handcuffs "closed." (*Id*. at 1:06:14-17). Mosley made no other complaints or comments regarding the handcuffs. (*See Id.; see also* Doc. 34-1).

Officer Long's actions are entirely reasonable under the circumstances, and the record is void of evidence that any force was used on Mosley at the time he was arrested, much less gratuitous force. Stated another way, the video evidence confirms that the handcuffs were not applied with force or too tightly. Nor does the record reflect that anyone, including Mosley, knew that the handcuffs, as applied, were too tight or causing discomfort until Mosley first complained about them nearly 45 minutes after they were secured on him. Instead, the record confirms that the handcuffs "locked up" or tightened *after* Mosley was placed in the back of the patrol car and *after* he laid down in the back seat of the patrol car. Additionally, there is no indication or suggestion that Officer Long ignored Mosley at any time during the arrest, including his complaint of arm pain. Rather, the evidence confirms that upon hearing Mosley's complaint that he was stuck, and his arm was hurting, Officer Long visually checked on him and told him to wait while he prepared necessary reports. Within two minutes, Mosley explained more thoroughly that he was hurting due to the handcuffs tightening on him, and Officer Long took immediate action and resecured the handcuffs, specifically checking the tightness of them before placing Mosley back in the patrol car.

Notably, "only the most exceptional circumstances will permit an excessive force claim on the basis of handcuffing alone." *Sebastian v. Ortiz*, 918 F.3d 1301, 1312 (11th Cir. 2019). These cases typically involve a combination of a plaintiff being handcuffed for a lengthy amount of time, knowledge by the officer that the handcuffs were too tight and causing pain, and serious injury. *See Id.* (Handcuffs were left in place for more than five hours after plaintiff arrived at the

station, long after he first complained about them, and he suffered nerve damage that caused permanent loss of feeling in his hands.); *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007) ("[U]nduly tight handcuffing can constitute excessive force where a plaintiff alleges some actual injury from the handcuffing and alleges that an officer ignored a plaintiff's timely complaints (or was otherwise made aware) that the handcuffs were too tight."); *Kopec v. Tate*, 361 F.3d 772 (3rd Cir. 2004) (Officer was not entitled to qualified immunity where excessively tight handcuffs were placed on plaintiff and the officer failed to respond to the plaintiff's repeated requests for them to be loosened.). Such is not the case here, as Officer Long quickly acted to loosen Mosley's handcuffs upon learning the handcuffs had locked on Mosley and Mosley was in pain. *Cf., Burchett v. Kiefer*, 310 F.3d 937, 945 (6th Cir. 2002) (finding no constitutional violation where the officers were unaware the plaintiff's handcuffs were too tight and "[o]nce Burchett gave them notice, they immediately acted"); *Tibbs v. City of Chicago,* 469 F.3d 661, 666 (7th Cir.2006) (concluding that the arresting officer did not act unreasonably when he fastened the plaintiff's handcuffs too tightly, and the plaintiff, whose injuries did not require medical care, complained only once about his handcuffs "without elaborating on any injury, numbness, or degree of pain").

Review of the record reveals that Officer Long's actions were reasonable under the circumstances of the arrest. For this reason, Officer Long is entitled to qualified immunity.

### IV. Conclusion.

Based on the above reasons, it is **RECOMMENDED** that Summary Judgment be **GRANTED** in favor of Defendant Officer Tyrese Long as to the Fourth Amendment claim against him for excessive force. It is further **RECOMMENDED** that this action be **DISMISSED** in its entirety.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D.ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** and **ORDERED** this **4th** day of **April, 2024**.

      /s/ *Katherine P. Nelson*
KATHERINE P. NELSON
UNITED STATES MAGISTRATE JUDGE